The undersigned have reviewed the prior Amended Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner but have rewritten the Opinion and Award for purposes of clarity.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Key Benefit Services is the carrier on risk.
4. As computed from the Form 22 and employment earnings information submitted by the parties, plaintiffs average weekly wage was $325.31, which yields a compensation rate of $234.87 per week.
5. Plaintiff was injured in an automobile accident on August 23, 1999.
6. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of documentation from Carolinas Health Care, Carolina Institute of Rehabilitation and Charlotte Institute of Rehabilitation.
7. The issues to be determined are: (i) whether plaintiffs injury by accident arose out of and in the course of his employment with defendant-employer; (ii) if so, what, if any, compensation is due plaintiff?
 ***********
The Full Commission adopts, with some modifications, the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 25 years old. Plaintiff has a high school education and attended the University of South Carolina at Lancaster.
2. Plaintiff previously worked in a restaurant and had prior experience working with concrete and driving a dump truck.
3. Plaintiff was in the military from 1996 until 1998. While in the military, plaintiff was trained to drive 5-ton dump trucks and drove these trucks for three years.
4. Plaintiff began his employment as a laborer with defendant-employer in July 1999. Plaintiffs job duties included mixing and raking concrete, constructing and finishing pool decks, and other general contracting work.
5. Plaintiff and his brother, Donald Osmond, who was also employed by defendant-employer, owned no vehicle and typically rode to the job site with their roommate and co-worker, Joe Whitehead. However, on Monday, August 23, 1999, Mr. Whiteheads vehicle had broken down and was inoperable. Plaintiffs supervisor, Greg Braun, agreed to pick up plaintiff and Donald Osmond and transport them to work that day at a job site in downtown Charlotte.
6. After picking up plaintiff and his brother at their home in Charlotte, Mr. Braun planned to return to his house near Lake Norman where the equipment for defendant-employers business was stored. Mr. Brauns wife, Holly Sadjak Braun, is the owner of defendant-employer. Mr. Braun intended to return to his house to pick up a dump truck so that one person could drive the dump truck while another drove Mr. Brauns pickup truck to the work site. Mr. Braun planned to leave the dump truck at the work site, while he would drive his pickup truck home at the end of the work day.
7. Because of the need to go to Mr. Brauns house to pick up the dump truck prior to reporting to the job site on the morning of August 23, 1999, Mr. Braun wanted to avoid rush hour traffic. Mr. Braun instructed plaintiff and his brother that he would pick them up at 5:30 a.m., which was earlier than usual. Mr. Braun had transported plaintiff and Donald Osmond to the job site on several other occasions, but had never required them to be ready before 7:00 a.m. In fact, plaintiff and Donald Osmond typically reported to work at the job site between 8:00 and 9:00 a.m. Plaintiff and Donald Osmond normally reported directly to the job site and did not go first to Mr. Brauns house. This was the first time that plaintiff and his brother were to have driven to Mr. Brauns house to pick up a vehicle before reporting to the job site.
8. After Mr. Braun picked up plaintiff and Donald Osmond early in the morning of August 23, 1999, they traveled north from Charlotte on Interstate 77 toward Lake Norman through heavy rain. Mr. Braun lost control of the pickup truck when it began to hydroplane due to standing water on the roadway. The truck struck a tree and plaintiff, who was riding in the flatbed of the truck, was thrown out of the vehicle and sustained serious head injuries.
9. Following the accident, plaintiff was treated at Carolina Medical Center on September 9, 1999 and transferred to the Charlotte Institute of Rehabilitation, where he was under the care of Dr. David Wiercisiewski, an expert in physical medicine and rehabilitation.
10. Plaintiff was discharged from the Charlotte Institute of Rehabilitation on September 21, 1999. At the time of discharge, plaintiff was diagnosed with traumatic brain injury with left frontotemporal contusions, left subdural hematoma, and right frontotemporal contusion, pneumonia with Burkholderia cetbcia, right occipital skull fracture, right temporal bone fracture, foramen magnum fracture, and left VI nerve palsy.
11. The Charlotte Institute of Rehabilitation recommended that plaintiff participate in an outpatient brain injury program and indicated plaintiff needed 24-hour supervision.
12. In December 1999, Dr. Wiercisiewski released plaintiff to return to limited or light duty work.
13. Around December 20, 1999, plaintiff began working at Sagebrush Restaurant in Rock Hill, South Carolina as a dishwasher, earning $6.25 per hour. Plaintiff only worked at this job for about a week.
14. Plaintiff next worked at J-Reck Subs in New York in February 2000, earning $5.25 per hour. This employment also only lasted a week.
15. In March 2000, plaintiff returned to North Carolina and on approximately March 20, 2000 began working for Black and Decker through a temporary service. Plaintiff was paid an hourly wage of $7.75. Plaintiff continued to be employed at this job at the time of the hearing before the Deputy Commissioner. Plaintiff did not know how long he would be employed in this position since it was a temporary job.
16. The evidence of record is unclear who would have driven the dump truck and the pickup truck after Mr. Braun, plaintiff and Donald Osmond arrived at Mr. Brauns house at Lake Norman. However, the evidence clearly shows that Donald Osmond had failed a road test given by Mr. Braun and was unable to drive the dump truck. Joe Whitehead, Donald Osmond and plaintiff believed plaintiff was to drive the dump truck upon arrival at Mr. Brauns house. Mr. Braun knew plaintiff had military experience driving a dump truck.
17. At the time of the accident, plaintiff had a valid drivers license, but Donald Osmond did not. Therefore, the greater weight of the evidence by inference demonstrates that Mr. Braun asked plaintiff to accompany him back to Mr. Brauns house on August 23, 1999 so plaintiff could drive the dump truck to the job site. Mr. Braun required the assistance of plaintiff in order to have two vehicles driven to the job site, which benefited defendant-employer.
18. Defendant-employer required plaintiff to travel on a special errand on August 23, 1999. The hazards of this route of travel became the hazards of plaintiffs employment with defendant-employer.
19. On August 23, 1999 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
20. As a result of the compensable injury by accident, plaintiff was disabled and unable to earn wages in any employment from August 23, 1999 until December 20, 1999. Thereafter, plaintiffs wage earning capacity was diminished in that he was unable to earn the same wages he was earning at the time of his injury.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. To be compensable under the Workers Compensation Act, an injury must arise out of and in the course of employment. N.C. Gen. Stat. 97-2(6). Ordinarily, an injury occurring while an employee travels to or from work does not arise in the course of employment and is not compensable.Jennings v. Backyard Burgers of Asheville, 123 N.C. App. 129,472 S.E.2d 205 (1996). However, the special errand exception to this general rule allows recovery when an employee is injured while performing a special errand for his employer. Aaron v. New Fortis Homes, Inc.,127 N.C. App. 711, 493 S.E.2d 305 (1997); McBride v. Peony Corp.,84 N.C. App. 221, 352 S.E.2d 236 (1987).
2. In this case plaintiff was on a special errand that directly benefited his employer. Plaintiffs supervisor, Mr. Braun, required the assistance of plaintiff in order to transport the two vehicles to the job site. Mr. Braun instructed plaintiff to be ready at 5:30 a.m. so that Mr. Braun, plaintiff and Donald Osmond would avoid the rush-hour traffic and have time to drive to the Lake Norman location to pick up the dump truck and then continue back to the Charlotte job site. Therefore, plaintiffs injury is compensable under the special errand exception to the coming and going rule. Aaron v. New Fortis Homes, Inc., supra. On August 23, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat.97-2(6).
3. As a result of his compensable injury by accident on August 23, 1999, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $216.88 per week from August 23, 1999 through December 19, 1999. N.C. Gen. Stat. 97-29.
4. As a result of plaintiffs compensable injury by accident, plaintiff is entitled to compensation for partial disability at the rate of two-thirds of the difference between his former average weekly wage of $325.31 and the weekly wages he was able to earn from December 20, 1999 and continuing for as long as he remains so disabled, subject to the 300-week statutory limitation. He shall receive his full compensation rate during any weeks he was not so employed. N.C. Gen. Stat. 97-30.
4. Plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of his compensable injury by accident. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for his temporary total disability from August 23, 1999 through December 19, 1999 at a rate of $216.88 per week. Said amount has accrued and shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
2. Defendants shall pay compensation to plaintiff for his temporary partial disability at the rate of two-thirds of the difference between plaintiffs average weekly wage at the time of the compensable injury and the weekly wages he was able to earn beginning December 20, 1999 and continuing thereafter for as long as he remains so disabled, subject to the 300-week statutory limitation. Plaintiff shall receive his full compensation rate during any weeks he was not employed. Compensation which has accrued shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
3. Defendants shall pay all medical expenses resulting from plaintiffs compensable injury by accident on August 23, 1999.
4. A reasonable attorneys fee of twenty-five percent of compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiffs counsel.
5. Defendants shall pay the costs.
This the ___ of May, 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb